```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MAYAGUEZ S.A.,

              Plaintiff,

          v.                           16 CV 6788 (PGG)

CITIGROUP INC. and CITIBANK,
N.A.,

              Defendants.

------------------------------x
                                       New York, N.Y.
                                       April 12, 2018
                                       11:30 a.m.

Before:

                 HON. PAUL G. GARDEPHE,

                                       District Judge

                        APPEARANCES

QUINN EMANUEL
     Attorneys for Plaintiff
BY:  DANIEL PULECIO-BOEK
     GABRIEL SOLEDAD
     LUKE NIKAS
     SAMANTHA GILLESPIE

SHEARMAN & STERLING
     Attorneys for Defendants
BY:  AGNES DUNOGUE
     ADAM HAKKI
     DAVID SELESNICK
```

1              (In open court, case called)

2              THE COURT:  All right.  This is a dispute about

3    currency trades that Mayaguez, a Colombian corporation, entered

4    into with various Citibank entities.

5              Last month I issued a decision on defendant's motion

6    to dismiss.  I concluded that plaintiff's claims are not

7    subject to a choice of law provision contained in certain

8    agreements that govern the transactions between the parties.

9              Accordingly, whether Colombian law or New York law

10   applies is currently an open issue about which I, of course,

11   reach no conclusion.  Having said that, it does seem likely to

12   me that ultimately I will find that Colombian law applies.  The

13   amended complaint pleads causes of action under certain

14   Colombia civil and commercial code provisions that are alleged

15   to relate to false representations, false promises, and

16   fraudulent omissions in connection with contacts.

17             Under New York's tort choice of law principles, if

18   "conduct-regulating laws are at issue, the law of the

19   jurisdiction where the tort occurred would generally apply

20   because that jurisdiction has the greatest interest in

21   regulating behavior within its borders."  Citing *GlobalNet*

22   *Financial.com v. Frank Crystal & Company*, 449 F.3d 377, 384 (2d

23   Cir. 2006).  "A tort occurs in the place where the injury was

24   inflicted, which is generally where the plaintiffs are

25   located."  Citing *Pension Committee of the University of*

1  *Montreal Pension Plan v. Bank of America Securities LLC*, 446
2  F.Supp.2d 163, 191 (S.D.N.Y. 2006).
3              It appears to me that the Colombia code provisions at
4  issue are "conduct-regulating laws."  Moreover, Mayaguez is a
5  Colombian company, and the counter-party to the July 2014
6  currency trade was Citibank Colombia, also a Colombian company.
7  Acknowledging that the counter-party to January 2015 currency
8  trade is Citigroup, an American company, Colombian law, it
9  seems to me, is likely to apply to that trade as well because,
10 again, the claims at issue involve conduct-regulating laws, and
11 Mayaguez is a Colombian company.  Accordingly, it does seem
12 likely to me that ultimately I will find that the law of
13 Colombia applies to the parties' dispute.
14             I mention this because, in my experience, a
15 determination that foreign law applies introduces even more
16 uncertainty in litigation than is typically the case.  Parties
17 submit competing affidavits from experts in foreign nations
18 law.  The Court generally has no background in the foreign law
19 and is ill equipped to discern which expert has the better side
20 of the argument.  If the foreign country uses a common law,
21 cases can be cited, and sometimes that's helpful.  Colombia
22 does not appear to be a common law country, so I'm not sure
23 whether there will be reported decisions or how useful any such
24 cases would be.
25             Given the uncertainties which I think are likely to

arise, as well as the cost of litigating this matter over a year and a half of discovery, as that the parties propose to do, it appears to me that an effort should be made to settle the case early on.

Have there been any settlement discussions in the case?

MR. SOLEDAD:  No, your Honor.

THE COURT:  Is there any interest in an attempt to try to settle the case?

MR. SOLEDAD:  Absolutely, your Honor.

THE COURT:  Mr. Hakki, what do you say?

MR. HAKKI:  Your Honor, I would say that I don't think we have discussed the specific proposition in connection with this conference with our clients, so I will speak tentatively in saying that we're prepared to litigate the case. Obviously when the presiding judge over the case suggests that settlement is something to consider, we'll carefully consider that. And I guess that's all I could say at this point, your Honor.

THE COURT:  Well, I don't force people to go to settlement conferences. So if there's no interest and no belief that a settlement discussion could ever be productive, I don't make people do it. I don't want to waste anyone's time.

I will tell you that Magistrate Judge Cott is assigned to this case, and he is just an amazing settlement judge. And I have sent him matters that the parties were as far apart as

1  America is from China, and somehow he's been able to bring them
2  together. So I want you to know that that resource is
3  available to you if at any point you feel that the involvement
4  of a neutral person might be helpful.
5      I do believe that, without knowing much about Colombia
6  law other than the discussion that took place in the briefs, it
7  does seem to me that it is a case that presents significant
8  legal risk to both sides, and whenever I see a case that
9  presents significant legal risk to both sides, and particularly
10 one that is going to be extremely expensive to litigate, I do
11 try to communicate that to the parties early on because I think
12 there's a benefit in really exhausting any possibility there
13 might be of resolving the case before the litigation wheels
14 turn any further.
15     And, of course, they have turned quite a bit already.
16 We have gone through a briefing process and a motion to
17 dismiss. The schedule that the parties have outlined for
18 discovery, when you factor in the likelihood that there will be
19 motions for summary judgment, we're probably looking at three
20 years of litigation in the district court, at least, before the
21 matter is resolved.
22     So it's a very expensive process on which to embark.
23 There's a lot of money involved, so it may justify the expense,
24 but I would be remiss if I didn't communicate to you what I
25 suspect, which is that three years from now we'll find

1  ourselves probably not knowing all that much more than we know
2  now.  I mean after all, the parties are in a position to know
3  what representations were made about these currency trades.  We
4  can probably make educated guesses about what Colombia law will
5  provide, assuming I ultimately determine that Colombia law
6  applies.  And so what I'm worried about is a lot of time and
7  expense will be put into this case over the next three years,
8  and that's fine, but I want to make sure that it's absolutely
9  necessary.
10          And if it is absolutely necessary, then we will
11 obviously embark on that exercise.  But it's going to be a long
12 and expensive exercise, and I want to make sure that it's an
13 exercise that is useful, productive, and has a point to it.
14 Because if not, we should take the time now to try to figure
15 out whether there's a negotiated resolution that might be
16 possible.  I leave it entirely to you, but I wanted to plant
17 the thought in your minds, and I hope you will discuss it with
18 your clients and make sure that there's no opportunity to
19 settle the case now.
20          The letter I received indicated that the parties
21 wanted to raise some issues.  I think one of them was that
22 choice of law issue, and I'm happy to hear anything anyone
23 wants to say on that or any other subject.
24          So what's on plaintiff's mind?  Anything that anyone
25 wants to raise?

1          MR. PULECIO-BOEK:  Your Honor, thank you.

2          As you said, it is our view as well that Colombia law

3  applies, that's why we pled it as the principle claims of the

4  complaint.  And, of course, we're happy to brief that issue if

5  and when the Court decides we should brief it.

6          I know the defendants are going to set forth the

7  position that they set forth in our meet and confers about how

8  they envision or some suggestions they have.  Our vision is

9  respectful of your opinion that we should develop a factual

10 record before we actually get a chance to brief this issue, and

11 that might come in around the stage of summary judgment.  And

12 that is what your Honor did in the *Landesbank v. RBS* case.

13         Another issue we wanted to bring to your Honor's

14 attention is discovery.  And specifically, there is some

15 indication that we have from defendants to date that they might

16 not provide discovery that is quote, unquote, located outside

17 of the United States.  By that, I mean obviously we envision

18 that some discovery might be, for example, related to Citibank

19 Colombia.  And so we have gotten some indication from

20 defendants -- I don't want to speak for them, obviously they

21 can speak for themselves -- they might present an issue.  So we

22 wanted to bring that issue to your attention and perhaps get

23 your guidance on that specifically.

24         Obviously it is our view that discovery from

25 wholly-owned subsidiaries of a party is discovery in the

|     |                                                                        |
| --- | ---------------------------------------------------------------------- |
| 1   | custody, control, or possession of that party.  And indeed,            |
| 2   | that has been the case in many cases in this district,                 |
| 3   | specifically, for example, *Peachtree*, specifically discovery         |
| 4   | *Financial Services v. Visa* where Citi as a third party was           |
| 5   | compelled by the Court in this district to produce discovery,          |
| 6   | to produce documents from their wholly-owned subsidiaries.  So         |
| 7   | we don't see why in the case here, being parties, they would           |
| 8   | precluded from producing discovery from wholly-owned                    |
| 9   | subsidiaries.  So we wanted to bring that issue to your                |
| 10  | attention and hopefully get a chance to get your guidance.             |
| 11  |           THE COURT:  All right.  Mr. Hakki, what's on your            |
| 12  | mind?                                                                  |
| 13  |           MR. HAKKI:  Your Honor, just a couple of comments.           |
| 14  | First, thank you.  With regard to your initial remarks, we'll          |
| 15  | discuss them with our clients, and depending on what they say,         |
| 16  | that may have some bearing on schedule and discovery and so on.        |
| 17  |           But leaving that aside for the moment, your Honor, I        |
| 18  | think it's important to remember we have a Colombian plaintiff,        |
| 19  | we may have Colombian law governing the case, and yet here we          |
| 20  | are in Manhattan in the U.S. Court.  The reason for that is the        |
| 21  | ISDA, the contract pursuant to which these currency                    |
| 22  | transactions proceeded, has a broad exclusive jurisdiction             |
| 23  | clause for New York.  They invoked it.  They wanted to be --           |
| 24  | the plaintiff invoked.  They wanted to be in New York.  Turns          |
| 25  | out that the choice of law clause is slightly more narrowly            |

1   written, the choice of law clause calling for New York law.
2   Your Honor concluded -- we obviously disagreed, but your Honor
3   concluded that it does not govern, and therefore we have an
4   open choice of law question.
5             So we're in a little bit of an unusual posture
6   inasmuch as normally you would say the way this should be
7   dismissed is forum-non grounds.  We have Colombian law, a
8   Colombian plaintiff, they're saying the injury was in Colombia,
9   but we have this broad exclusive jurisdiction clause and here
10  we are.  But there are lots of provisions, your Honor, in the
11  ISDA that are also broad, like the jury trial waiver.
12            The contract which they invoked to get into this Court
13  doesn't disappear simply because New York law doesn't govern
14  the interpretation of the contract.  So there are non-reliance
15  provisions in the contract, your Honor, there are express
16  agreements that we were not advising them of their fiduciaries,
17  et cetera, in the agreement.  Those don't disappear.  And even
18  if Colombian law governs, they will loom very large in this
19  case.  This was an arm's length transaction, your Honor.
20            So I'm not here to give my jury summation or argue
21  summary judgment or anything else, but just to say that we
22  don't consider the question of which law applies to be that
23  significant, to be honest, your Honor.  I think we agreed with
24  your opinion that, assuming that the ISDA choice of law clause
25  didn't apply, that it is a fact question that has to be

1  developed. I don't know the right time, your Honor, to tee
2  that up with you.
3          It may be that, assuming we proceed here, that we look
4  at it and say we agree that Colombian law should apply and
5  let's go. We may look at it and say we actually see it
6  differently; particularly when you look at the surrounding
7  contract and everything else, even if it doesn't formally
8  decide the issue, it may be relevant. It's a New York
9  agreement. Again, that's why we're here. So we'll have to
10 see. And if we think that there's an appropriate dispute on
11 the issue of the governing law in light of your Honor's ruling
12 and your comments today, I assume we'll file a premotion letter
13 and tee it up for some sort of resolution, but we're not there
14 yet.
15         On discovery, your Honor, I don't think it's an
16 appropriate time to get into sort of exactly what are the
17 discovery obligations in Colombia. We have an agreed discovery
18 schedule. It's a rather brisk one. I don't think we have any
19 disagreements at all on the schedule. We'll be meeting and
20 conferring after this conference on things like search terms,
21 relevant dates, what should we produce initially and so on.
22 It's not an open and shut question how you deal with discovery
23 from overseas, as your Honor knows. Colombia is a foreign
24 entity, it's a sovereign, they have privacy questions and
25 potentially secrecy questions, entities questions. I'm not

1   taking a position today or at the meet and confer on any of
2   those things other than to say we have to carefully and
3   responsibly look at them and work with plaintiffs, obviously.
4   　　　　　There will have to be discovery from Colombia in this
5   case if it proceeds into discovery, and one way or another
6   that's going to happen, and the appropriate way for that to
7   happen is what we need to discuss, but I don't think we have a
8   discovery dispute or anything to talk about in that regard in
9   front of your Honor, and that's sort of our view on that
10  question.
11  　　　　　We do have the issue of whether the jury trial demand
12  is proper in light of the ISDA. I think it's very clear from
13  the documentation that they invoked to get it to this Court
14  that they don't have a right to a jury trial, but that is, I
15  think, perhaps more premature, your Honor, we could move to
16  strike the jury demand at an appropriate time.
17  　　　　　Thank you, your Honor, unless you have questions.
18  　　　　　THE COURT: All right. Well, let me say that I'm not
19  going to approve a discovery schedule that takes us out a year
20  without sort of a much clearer understanding than I have now of
21  what exactly is going to happen and what the stages are going
22  to be. And I know that the parties are having those kinds of
23  discussions now, but what I'm telling you is I want to be a
24  part of that and I want to understand what is going to happen.
25  　　　　　So how long do you think it will take for the parties

1    to have a sense of how discovery is going to proceed such that
2    they can report back to me a couple of weeks?  Because I want
3    to have some understanding of what the stages are going to be.
4    It may be premature, but I would like to know how many
5    depositions might be needed.  I need to have an understanding
6    of what the scope of the electronic discovery is.  Are we
7    talking about a massive amount of discovery or something that
8    is more manageable?  At this point I really don't have any
9    sense of the magnitude of the discovery operation that is going
10   to be required here.
11           MR. HAKKI:  Your Honor, speaking for defendants, that
12   obviously makes good sense to us, and we're happy to have those
13   discussions and come back to the Court.
14           The schedule that we have agreed contemplates that we
15   would exchange initial disclosures in 30 days of the conference
16   order.  Normally I would say, your Honor, that we would have
17   our best sense of how many depositions there are going to be,
18   exactly how many custodians there are going to be, what third
19   parties have been identified and those sorts of things after we
20   exchanged initial disclosures.
21           So if the 30 days to exchange initial disclosures is
22   okay with the Court, which I think makes sense given some of
23   the foreign issues we have to work through and some of the
24   items we discussed today, then I would think we could come back
25   to the Court maybe two weeks after that with more granularity

1    about have we agreed to search terms, how many depositions do
2    we think there will be, when do we think we'll finish producing
3    documents, what's the general volumes.  Speaking for my
4    clients, we would be very pleased to have that discussion, and
5    I think that would be the right amount of time unless the Court
6    wants to move even quickly than that, which, of course, we can
7    do if we must.
8              THE COURT:  What does plaintiff say?  What I think
9    Mr. Hakki is proposing is that the parties would have 30 days
10   for initial disclosures and then two weeks later, which would
11   be May 25th, they would send a joint letter to me with a lot
12   more detail about what is going to happen and when it's going
13   to happen.
14             MR. SOLEDAD:  Your Honor, we're prepared to move as
15   quickly as your Honor would have us.  We thank you for this
16   discussion.  This is exactly what my colleague hoped to prompt
17   in raising discovery issues.  We're looking for guidance.  From
18   our perspective, we're looking to move with great haste.  We
19   agreed to a schedule, and while there have been a few
20   extensions, we wanted to make sure we're still, notwithstanding
21   those extensions, exchanging search terms, exchanging
22   custodians.  We'll exchange those things in short order even
23   more quickly than one might see in a typical case because we
24   really want to move this along.
25             And as far as the scope, obviously we don't know all

1   the players, we don't exactly what their documents are going to
2   show, but from our perspective, in terms of our documents in
3   terms of with we need and what we believe we need to prove our
4   case, I think we have a strong understanding of that as well,
5   even standing here today, that I will be happy to share or go
6   back and work with Mr. Hakki and our colleagues from Sherman.
7             THE COURT:  So what I will do is I'm not going to
8   enter a full case management plan today, I'm just going to
9   enter an order that will say that the initial disclosures will
10  be exchanged by May 11, the parties will submit a joint letter
11  by May 25th giving me a significant amount of detail about what
12  the process is going to be, setting up stages for when things
13  are going to happen.
14            I may have a conference with you after that, after I
15  get that joint letter.  On the other hand, if what you propose
16  sounds reasonable to me, I may just endorse it.
17            I will see you every 90 days anyway.  I want to keep
18  closely in contact with you to make sure that things are
19  happening the way they should be, and also in the event that
20  any problems emerge with respect to discovery or anything else.
21  So this is the type of case I want to be in touch with you on a
22  fairly frequent basis.
23            MR. SOLEDAD:  If may briefly, your Honor, I would also
24  suggest -- I think it's implied by what you said, but I want it
25  to be clear that in the joint letter we submit to you it

1    doesn't just set out the stages of discovery that we
2    anticipate, but also has a section where we raise initial
3    disputes we may have that may impact the schedule in discovery
4    so we can get your guidance if necessary, submit a brief to you
5    or the magistrate, to front load that so we can predict
6    better --
7              THE COURT:  Yes, I want to know as soon as you know
8    that there's an impasse about a particular issue.  I want to
9    know about it so that I can make a decision to get either
10   involved myself or get Magistrate Judge Cott involved, in whom
11   I have outmost confidence.  So I don't want those kinds of
12   disputes to delay the proceedings in any way.  So please let me
13   know as soon as you know that there's an impasse that is
14   preventing things from moving forward, and I will address it
15   either myself or ask Judge Cott to.
16             MR. SOLEDAD:  Thank you, your Honor.
17             MR. HAKKI:  Your Honor, we agree with plaintiffs on
18   that.  Just we one point of clarification, if we have a few
19   discovery disputes -- let's hope we don't have in any -- I
20   assume, as counsel suggested, we include them on May 11, or
21   would you like them brought sooner?
22             THE COURT:  Sooner is fine.  My process is you have to
23   send me a joint letter where each side lays out its position,
24   but as soon as you know there's a problem, let me know and I
25   will try to address it.

1           MR. HAKKI:  Thank you, your Honor.

2           THE COURT:  Other matters people want to talk about
3    today?

4           MR. SOLEDAD:  Your Honor, I just wanted to address one
5    point Mr. Hakki made regarding jury.  While we agree with
6    Mr. Hakki that we're not quite there yet as to this dispute, I
7    just wanted to sort of note that obviously we take a different
8    view as to how the jury will play out, and would note that
9    Citigroup, also a defendant here, is not a party to the
10   agreement that Mr. Hakki discusses.

11          THE COURT:  What I would say about the choice of law
12   issue and the jury demand is if the parties at any point feel
13   like a resolution of those issues would be helpful or is
14   necessary to the case proceeding in an efficient way, or maybe
15   it would have an impact on settlement, if you at any point feel
16   that to be true you can make an application and I will decide
17   that issue if there's an appropriate record to decide it.

18          The jury issue, that's not going to be one,
19   presumably, about which discovery would be necessary, so I
20   suppose maybe that could be teed up earlier.  But again, I
21   leave it to you whether or not that would be helpful to
22   ultimately allow the case to proceed or might be useful in
23   terms of settlement.  I don't know.

24          The choice of law issue, as I indicated, you may need
25   to take discovery, so it may make sense set that aside.  But I

1  just want to communicate that, with respect to those issues or
2  any other issues that emerge, if you feel like they're standing
3  in the way of the case proceeding or making it difficult for
4  the clients to weigh the risks going forward, alert me, and I
5  will try to resolve it if there's an appropriate record to do
6  so.
7           Anything else we should talk about this morning?
8           MR. PULECIO-BOEK:  No, your Honor.
9           THE COURT:  Thank you all.
10                              o0o