UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MAYAGÜEZ S.A.,

               Plaintiff,

     -against-

CITIBANK, N.A. and CITIGROUP, INC.,

               Defendants.

Case No. 16 Civ. 06788 (PGG) (JLC)

---

## [PROPOSED] AMENDED JOINT PRETRIAL ORDER

     Pursuant to this Court's Individual Rules of Practice in Civil Cases and Scheduling Orders,

Plaintiff Mayagüez S.A. ("Mayagüez") and Defendant Citibank N.A. ("Citibank")[1] respectfully

submit their proposed joint pretrial order.

**I.      Full Caption of the Action**

     The full caption of the case is given above.

**II.     Trial Counsel**

     **A.    Plaintiff Mayagüez**

Gabriel Soledad
(gabrielsoledad@quinnemanuel.com)
Juan P. Morillo
(juanmorillo@quinnemanuel.com)
Valerie J. Ramos
(valerieramos@quinnemanuel.com)
1300 I Street, NW Suite 900
Washington, DC 20005
Telephone: (202) 538-8000
Fax: (202) 538-8100

William C. Price
(williamprice@quinnemanuel.com)
865 S. Figueroa St., 10th Floor

---

[1] Although referenced in the caption, former defendant Citigroup, Inc. was dismissed from the case on summary judgment. *See* Memorandum Opinion and Order ("Opinion") dated March 25, 2022 (ECF No. 220), at 80, 82.

Los Angeles, California 90017
Tel: (213) 443-3000
Fax: (213) 443-3100

David M. Cooper
(davidcooper@quinnemanuel.com)
Samantha Gillespie
(samanthagillespie@quinnemanuel.com)
51 Madison Ave., 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Fax: (212) 849-7100

### B.      Defendant Citibank

Adam S. Hakki
Agnès Dunogué
John Nathanson
Shearman and Sterling LLP
599 Lexington Ave.
New York, New York 10022
(212) 848-4000
(212) 646-4000 (facsimile)
adam.hakki@shearman.com
agnes.dunogue@shearman.com
john.nathanson@shearman.com

## III.    Brief Statement as to the Basis of Subject Matter Jurisdiction

### A.      Plaintiff Mayagüez

Defendant Citibank removed the above-captioned civil action from the Supreme Court of

the State of New York, County of New York, to the United States District Court for the Southern

District of New York, pursuant to 12 U.S.C. § 632 (the Edge Act) and 28 U.S.C. § 1445.  This

Court has original jurisdiction over this matter pursuant to 12 U.S.C. § 632 and 28 U.S.C. § 1331

because Citibank is a national banking association organized under the laws of the United States

and this action arises out of transactions involving international or foreign banking and/or

international or foreign financial operations of Citibank and its affiliates, including, but not limited

to, its affiliate Citibank Colombia S.A.  Further, this Court ruled on Summary Judgment that

Citibank Colombia S.A. acted as an agent for Citibank in selling Mayagüez the transactions at issue. ECF 220 at 80. This Court has jurisdiction over the parties because the parties have a contractual agreement specifying that each party submits to this Court's jurisdiction. ECF 36 at 13 (Order on Motion to Dismiss).

###### B.     Defendant Citibank

This Court has jurisdiction to hear Plaintiff Mayagüez's federal claims pursuant to the Edge Act, 12 U.S.C. § 632, and state law claims pursuant to 28 U.S.C. § 1367.

#### IV.     Brief Summary of Claims and Defenses to Be Tried

###### A.     Plaintiff Mayagüez

Defendant Citibank violated Article 2341 of the Colombian Civil Code and Article 863 of the Colombian Commercial Code by making false, misleading, and incomplete representations and acting negligently and in bad faith when promoting and selling the currency trades Plaintiff Mayagüez entered into in November 2013 (the "November 2013 Currency Trade"), July 2014 (the "July 2014 Currency Trade"), and January 2015 (the "January 2015 Currency Trade") (collectively the "Currency Trades"). Under Article 2341 of the Colombian Civil Code a party is liable to another for any damages, foreseeable and unforeseeable, that it negligently causes to the other party. Likewise, under Article 863, a party is liable to another for damages, foreseeable and unforeseeable, caused by that party's acting negligently or in bad faith when negotiating a contract or contract amendment. In the alternative, under New York law, Defendant Citibank made negligent misrepresentations regarding the Currency Trades, which entitles Mayagüez to actual losses, which includes consequential damages.

Specifically, Defendant Citibank made false, misleading, and/or incomplete representations to Plaintiff Mayagüez relating, at minimum, to (1) Mayagüez's exposure to the U.S. Dollar ("USD") vis-à-vis its domestic ethanol sales; (2) the relationship between Colombian

ethanol prices and the exchange rate between the USD and Colombian Peso ("COP"); (3) Defendant Citibank's characterization of the Currency Trades as "hedges" that would protect Mayagüez from USD-COP exchange rate risk; and (4) how the Currency Trades worked and the risks associated with them.  Defendant Citi made these misrepresentations in various meetings, phone calls, emails, presentations, spreadsheets, and other documents sent to Plaintiff Mayagüez. And Defendant Citibank either knew, recklessly disregarded, or should have known that its representations to Plaintiff Mayagüez regarding the Currency Trades were false, misleading, and/or incomplete at the time that Citibank made them.  Citibank at all times purported to be an expert in the Currency Trades.

Furthermore, Defendant Citibank acted negligently and in bad faith when Citibank, among other things, (1) violated its own corporate policies and procedures by executing transactions that were inappropriate for its counterparty, Plaintiff Mayagüez; and failing to exercise greater concern for Mayagüez—particularly after the company suffered substantial losses from the July 2014 Currency Trade—by marketing and selling the January 2015 Currency Trade to Mayagüez but not offering an opportunity to terminate the July 2014 Currency Trade; (2) violated its duty of information by providing Mayagüez false, misleading, and/or incomplete information, as described *supra*; (3) violated its duty to act in Mayagüez's best interest and duty to provide Mayagüez advice by, in exchange for profit to Citibank, recommending that Mayagüez enter into the Currency Trades, knowing that the Currency Trades would increase Mayagüez's risks; and (4) violated its duty of vigilance and fidelity by prioritizing Citibank's interest, over Mayagüez.

Plaintiff Mayagüez would not have entered into the Currency Trades or sustained the damages that flow from the Currency Trades but for Defendant Citibank's misrepresentations and material omissions on which Mayagüez reasonably relied, including because Citibank at all times

held itself out as an expert in the highly complex Currency Trades it sold Mayagüez.  As a result, Defendant Citibank's misrepresentations and omissions caused Mayagüez tens of millions of dollars in damages.

### B. Defendant Citibank

Of the eleven claims asserted in Mayagüez's Amended Complaint, only three remain, as against Citibank; all claims have been dismissed as to Citigroup.  (*Compare* First Am. Compl. ¶¶ 151-267, ECF No. 15, *with Mayagüez S.A. v. Citibank, N.A.*, 2022 WL 901627, at *41 (S.D.N.Y. Mar. 25, 2022).)  Mayagüez pleads its two remaining claims under Colombian law for "culpa" under Article 2341 of the Colombian Civil Code and "culpa" and bad faith under Article 863 of the Colombian Commercial Code, and pleads its single remaining New York claim for negligent misrepresentation in the alternative.  Mayagüez's claims are based on (i) a single sensitivity analysis spreadsheet concerning ethanol revenues and the Colombian Peso/ U.S. Dollar exchange rate that a Citibank S.A. employee prepared, which Mayagüez contends (despite its intimate familiarity with ethanol pricing) led it to erroneously believe that any movement in the exchange rate would lead to a 1 to 1 change in its ethanol revenues, and (ii) the semantic assertions of an expert witness, contrary to industry and academic understanding and common sense, that the Currency Trades were not "hedges."

Citibank is liable neither for negligence or bad faith under the above-referenced Colombian law claims nor negligent misrepresentation under New York law.  Mayagüez cannot satisfy its burden of proving by a preponderance of the evidence the following necessary elements of its Colombian law claims: (1) that Citibank engaged in conduct with "*culpa*" ("fault," or under Mayagüez's expert's translation, "negligence") or with bad faith (including as to any purported secondary duties), in extra-contractual or pre-contractual dealings; that (2) Citibank's alleged conduct was the "adequate" cause of Mayagüez's alleged damages, such

that there is a "cause and effect relationship" that is not broken by an external cause, including Mayagüez's own actions or failure to act including its failure to inform itself; and that (3) Mayagüez suffered cognizable and recoverable damages.  Mayagüez also cannot satisfy its burden of proving by a preponderance of the evidence any of the following necessary elements of its claim under New York law, including that: (1) Citibank and Mayagüez stood in some special relationship imposing a duty of care on Citibank; (2) Citibank negligently provided incorrect information; (3) Citibank knew the information was desired by Mayagüez for a serious purpose; (4) Mayagüez intended to rely and act upon it; and (5) Mayagüez reasonably relied on it to its detriment.  Mayagüez also cannot satisfy its burden, under New York law, of proving that Citibank's conduct was the proximate cause of Mayagüez's alleged losses or that Mayagüez suffered cognizable and recoverable damages and should be awarded any relief it seeks.

Citibank's separate and additional defenses to be tried also include, in summary, the following – and in asserting its defenses, Citibank does not assume any burden of proof, persuasion or production with respect to any issue where the applicable law places the burden on Mayagüez:

- Citibank did not negligently provide incorrect or misleading information to Mayagüez and did not negligently fail to disclose information to Mayagüez, or otherwise engage in conduct that was negligent or grossly negligent; did not breach any duty of disclosure or any other duty to Mayagüez; and did not stand in a special relationship with Mayagüez imposing a duty of care on Citibank.

- Mayagüez knew some or all of the allegedly misstated or omitted information at the time it entered into the Currency Trades; did not intend to rely and act upon any of the information that Citibank allegedly failed to disclose; was not legitimately ignorant; did not actually or justifiably rely on any of Citibank's alleged misstatement or omission; did not suffer any legally cognizable injury or damages; failed to mitigate damages; assumed the risk of any losses and was conscious of such risks at all relevant times; and engaged in culpable conduct.

- Mayagüez's alleged claims are barred by the terms (including disclaimers and representations) of the Master ISDA Agreement, the Colombian ISDA, the Off Market Letters, and all other agreements relating to the Currency Trades.

- Mayagüez's alleged claims are barred because Mayagüez's alleged injuries were adequately or proximately caused by factors other than Citibank's alleged misstatement or omissions, including the comparative fault, comparative negligence, and/or contributory negligence of Mayagüez.  Further, to the extent any of Mayagüez were able to prove any of its damages claims, they should be set off by the amount of damages that Mayagüez failed to mitigate, and the amount of damages caused by Mayagüez and/or Mayagüez's culpable conduct.

A more detailed exposition or outline of Citibank's factual and legal contentions, arguments and defenses can be found in its Proposed Findings of Fact and Conclusions of Law and Trial Memorandum, which are incorporated by reference.

## V.     Statement Listing Each Element or Category of Damages Sought

### A.     Plaintiff Mayagüez

Plaintiff Mayagüez seeks damages for all foreseeable and unforeseeable damages caused by Defendant Citibank's violation of Article 2341 and Article 863.  The damages Mayagüez is entitled to under either Article 2341 and Article 863 are the same.

The categories of these damages and amounts are as follows:

- Payments made to Citibank under the July 2014 Currency Trade, which amount to USD 818,937;

- Payments made to Citibank in connection with the January 2015 Currency Trade and exiting the Currency Trades, which amount to USD 67,939,713;

- Interest payments on loans that Mayagüez was required to take out in order to make the payments to Citibank, which amount to USD 21,990,817 through March 2022 and which are ongoing, such that they will need to be updated at trial; and

- Pre-judgment interest, calculated as USD 13,458,478 as of June 23, 2022, which will need to be updated at trial.

If this Court were to find New York law to apply, indemnification from what was lost because of Defendant Citibank's negligence, and those consequential damages would be calculated using the same categories and calculations as above.

**B.    Defendant Citibank**

Citibank has stated no counterclaims but reserves the right to seek attorneys' fees and costs from Mayagüez.  As set forth in Citibank's Proposed Findings of Fact and Conclusions of Law and Trial Memorandum, which are incorporated by reference, Mayagüez is not entitled to any of the categories of damages and other relief it seeks.

**VI.    Statement by Each Party as to Whether the Case Is to Be Tried to a Jury**

**A.    Plaintiff Mayagüez**

The Court has ruled that this action will proceed via bench trial.  Plaintiff Mayagüez anticipates that it will need the equivalent of 4–5 trial days for the presentation of its case in chief.

**B.    Defendant Citibank**

This Court granted Citibank's motion to strike Mayagüez's jury demand.  *Mayagüez*, 2022 WL 901627, at *41.  Accordingly, the case will proceed as a bench trial.  Defendant anticipates that it will need the equivalent of 4-5 trial days for the presentation of its case in chief.

**VII.    Statement as to Whether All Parties Consent to Trial by Magistrate Judge**

The parties do not consent to trial of the case by a magistrate judge.

**VIII.    Stipulations or Agreed Statements of Fact or Law**

The parties have agreed to Stipulations of Fact and Law, which are appended hereto as Exhibit A and Exhibit B.  The Stipulations do not include all of the facts or law that Mayagüez or Citibank deem relevant, but rather include only those on which the Parties were able to reach agreement.

## IX.   Witness Lists

### A.   Plaintiff Mayagüez

Appended hereto as <u>Exhibit C</u> is Plaintiff Mayagüez's list of witnesses it plans to call at trial, either in person, via affidavit, or deposition designation, or may call at trial if the need arises.

### B.   Defendant Citibank

Appended hereto as <u>Exhibit D</u> is Defendant Citibank's list of witnesses it plans to call at trial, either in person, via declaration/affidavit, or deposition designation, or may call at trial if the need arises.

## X.   Deposition Designations and Cross Designations

Mayagüez and Citibank state that the designation or counter-designation by either of the Parties of any portion of a deposition transcript includes the designation of the related portion of the video recording of that deposition.

### A.   Plaintiff Mayagüez

In addition to the witness testimony provided by affidavit, Plaintiff Mayagüez has designated deposition testimony as reflected in <u>Exhibit E</u>, with Defendant Citibank's counter-designations and objections thereto, as well as Mayagüez's objections to Defendant Citibank's counter-designations.

### B.   Defendant Citibank

In addition to the witness testimony provided by declaration/affidavit, Defendant Citibank has designated deposition testimony as reflected in <u>Exhibit F</u>, with Plaintiff Mayagüez's counter-designations and objections thereto, as well as Citibank's objections to Mayagüez's counter-designations.

XI.     **Exhibit Lists and Objections**

A.     **Plaintiff Mayagüez**

Appended hereto as Exhibit G is Plaintiff's Amended Exhibit List with Defendant's

Objections.

B.     **Defendant Citibank**

Appended hereto as Exhibit H is Defendant's Amended Exhibit List with Plaintiff's

Objections.


Dated: July 1, 2022
         New York, New York


QUINN EMANUEL URQUHART &
     SULLIVAN, LLP

By: /s/ Gabriel F. Soledad
     Juan P. Morillo
     Gabriel F. Soledad
     Valerie J. Ramos
     51 Madison Ave., 2nd Floor
     New York, New York  10010
     (212) 849-7000
     (212) 849-7100 (facsimile)
     juanmorillo@quinnemanuel.com
     gabrielsoledad@quinnemanuel.com
     valerieramos@quinnemanuel.com

*Attorneys for Plaintiff Mayagüez, S.A.*

SHEARMAN & STERLING LLP


By: /s/ Agnès Dunogué
     Adam S. Hakki
     Agnès Dunogué
     John Nathanson
     599 Lexington Avenue
     New York, New York  10022
     (212) 848-4000
     (212) 646-4000 (facsimile)
     ahakki@shearman.com
     agnes.dunogue@shearman.com
     john.nathanson@shearman.com

*Attorneys for Defendant Citibank, N.A.*


SO ORDERED:


_____
HON. PAUL G. GARDEPHE
UNITED STATES DISTRICT JUDGE

## Exhibit A: Stipulation of Statements of Fact

1.      Mayagüez is a Colombian company that produces and sells refined sugar and ethanol.

2.      Citibank is a U.S.-based national banking association.

3.      Non-party Citibank Colombia is an affiliate of Citibank with operations in Colombia.

4.      One example of a "plain vanilla" transaction is a "plain vanilla forward," in which parties contract to buy or sell foreign currency at a pre-specified price – or "strike price" – on a specified future date for a specified amount of currency or "notional amount."

5.      If the foreign currency depreciates such that the market exchange rate – or "spot" price – falls below the strike price, the hedging party – here, Mayagüez – would nonetheless be entitled to the agreed-upon, higher price for the foreign currency.

6.      The hedging party would then receive payments reflecting the difference between the strike price and the spot rate multiplied by the notional amount.

7.      Where the foreign currency appreciates above the strike price, however, the hedging party would be required to make payments to the counterparty – here, Citibank – amounting to the difference between the spot rate and the strike price multiplied by the notional amount.

8.      On July 28, 2009, Mayagüez and Citibank entered into an International Swaps and Derivatives Association agreement (the "Swap Agreement") in anticipation of future hedging transactions.

9.      Mayagüez entered into a similar agreement with Citibank Colombia on January 3, 2011, in anticipation of hedging transactions in Colombia (the "Colombian Swap Agreement").

10.      On November 6, 2013, Mayagüez entered into a limited compensation forward transaction with Citibank Colombia (the "First Currency Trade"). The First Currency Trade includes the following provisions: (1) a 2,020 peso strike price; (2) a $2 million notional amount per month; (3) a maximum amount of compensation of 900 million pesos; and (4) a term of 22 months.

11.      The Colombian government set the price of ethanol using the highest of the prices generated by three formulas: (1) a sugar-based formula; (2) a gasoline-based formula; and (3) a fixed minimum determined by the Ministry of Mines and Energy and a maximum amount not to exceed the price of gasoline in Bogota for the previous month.

## Exhibit B: Stipulation of Statements of Law

**I.    Colombian Law**

**1.    Article 2341 of the Colombian Civil Code**

1.    Article 2341 of the Colombian Civil Code ("Article 2341") imposes liability based on "culpa," which translates as "fault" or "negligence."

**2.    Article 863 of the Colombian Commercial Code**

2.    Article 863 of the Colombian Commercial Code ("Article 863") imposes certain duties and obligations on parties engaged in contract negotiations, including that they proceed with good faith free of negligence during the precontractual period.

**II.    New York Law**

3.    The elements of negligent misrepresentation are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.